UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-02-GWU

RONNIE B. ROSE,                                                                              PLAINTIFF,

VS.                                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

08-02 Ronnie B. Rose

           Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

08-02  Ronnie B. Rose

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

08-02  Ronnie B. Rose

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

08-02  Ronnie B. Rose

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

08-02  Ronnie B. Rose

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."  Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ronnie B. Rose, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, residuals of status-post left-sided empyema, major depression and an anxiety disorder.  (Tr. 13).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Rose retained the residual functional capacity to perform a significant number of light level jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 16-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 43-year-old man with a high school equivalency education and work experience as a carpenter, mason, and factory worker, could perform any jobs if he were limited to "light" level exertion with the option of sitting or standing at 45-minute intervals, and also had the following non-exertional restrictions.  (Tr. 384).  He: (1) could

08-02  Ronnie B. Rose

occasionally stoop, bend, crouch, crawl, and reach overhead; (2) could have no exposure to temperature extremes, dust, smoke, fumes, chemicals, noxious gases, or vibrating or hazardous machinery; and (3) would have a "limited but satisfactory" ability to deal with supervisors, coworkers, and the public, tolerate stress, maintain attention and concentration, and carry out detailed instructions.  (Tr. 384-5).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 385).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mr. Rose alleged disability due to lumbar disc disease, osteoarthritis, fibromyalgia, severe depression, and breathing problems.  (Tr. 114).  He had filed previous applications for DIB and SSI in 2002 on the basis of similar complaints, but his application was denied in an ALJ decision dated December 22, 2004 (Tr. 34-45), and not pursued beyond an Appeals Council denial (Tr. 54-6).  The ALJ in the present case declined to reopen the prior decision.  (Tr. 11).

08-02  Ronnie B. Rose

Although the plaintiff had several physical complaints, he does not challenge the ALJ's hypothetical findings in this regard.[1] He does maintain that the mental factors were inadequate and this court agrees, although for different reasons.

The plaintiff had been found in the previous ALJ decision to have a "limited but satisfactory" ability to deal with work stresses, maintain attention and concentration, understand, remember, and carry out complex instructions, and behave in an emotionally stable manner. (Tr. 45). Counsel for the plaintiff notes that Psychologist James Leisenring conducted a consultative evaluation in May, 2006 noting an extremely depressed and pensive affect, and concluding that Mr. Rose had recurrent major depression and an anxiety disorder with a current Global Assessment of Functioning (GAF) score of 50. (Tr. 268-70). A GAF score of 50 reflects "serious impairment." Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. In terms of specific functional restrictions, Mr. Leisenring opined that Mr. Rose would be "significantly compromised" in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (Tr. 271). The specific reason for this restriction was said to be "marked depression with anxiety." (Id.).

---

[1] The court notes in passing that the physical factors in the present decision are almost the same as those in the December, 2004 ALJ decision, although the plaintiff at that time had been found to require a sit/stand option as needed. (Tr. 45). The VE in the present case testified that altering the hypothetical question to reflect a sit/stand option as needed would not alter his testimony. (Tr. 386).

08-02  Ronnie B. Rose

In addition, counsel points to a mental medical assessment form prepared by the plaintiff's treating family physician, Dr. Truman Perry, indicating that Mr. Rose had a "seriously limited but not precluded" ability to deal with stresses, maintain attention and concentration, and demonstrate reliability. (Tr. 366-8). Noting that Dr. Perry had treated his patient with medications such as Zoloft and Celexa for depression, counsel maintains that the evidence shows a clear deterioration in Mr. Rose's mental condition since the previous ALJ decision.

The court does not find the ALJ's rationale for discounting Mr. Leisenring's restriction to be particularly persuasive.  The ALJ implied that the restrictions on responding appropriately to supervision, coworkers, and work pressures were related to "motivational deficits," without further discussion. (Tr. 15). Mr. Leisenring did list "presumed motivational deficits" as among Mr. Rose's "employment-related liabilities," but, as previously described, he related the relevant limitations to significant depression with anxiety.  (Tr. 271).  However, a state agency psychologist, Dr. Jan Jacobson, reviewed Mr. Leisenring's report and some of Dr. Perry's office notes and concluded that there was little overall evidence of the severe depression and anxiety found by Leisenring.  (Tr. 296).  Although Dr. Jacobson did not have the benefit of a review of all of Dr. Perry's office notes and did not see his mental medical assessment form, a review of Dr. Perry's office notes shows that while there were some mentions of depression, often relating to

10

08-02  Ronnie B. Rose

situational factors, most of Dr. Perry's treatment was for physical complaints and there are long stretches of notes with no references to mental problems or prescriptions of anti-depressants. (Tr. 356-7, 360-1). There are also references to the medication doing well controlling depression. (Tr. 251-2). Under the circumstances, there is substantial evidence to support the ALJ's determination that the opinions of the examining sources were not entitled to controlling weight.

However, although stating that he considered the opinions of the state agency experts, the ALJ did not provide any rationale for departing from the restrictions they assessed, namely a "moderately limited" ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond to changes in the work setting. (Tr. 294-6, 312-15). While the opinions of state agency reviewers are not necessarily binding, they are considered highly qualified experts whose opinions must be taken into account.[2] None of the factors cited by the ALJ even generally overlap with the category of completing a normal workday and workweek without interruptions from psychologically-based symptoms and

---

[2]"Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(f)(2)(iii) (2008).

08-02 Ronnie B. Rose

performing at a consistent pace without an unreasonable number and length of rest periods. Consequently, in view of the fact that the burden shifted to the defendant to prove the existence of jobs existing in the economy which the plaintiff could perform, a remand will be required to additional vocational testimony.[3]

The decision will be remanded for further consideration.

This the 29th day of September, 2008.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**

---

[3] Nor could it be said that the ALJ was adopting the mental restrictions from the 2004 ALJ decision, although he indicated that there had been no deterioration since the prior decision and suggested that he was bound by its findings pursuant to the case of <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837, 842 (6th Cir. 1997) and Acquiescence Ruling 98-4(6). (Tr. 17.). The previous ALJ had assessed a limited but satisfactory ability to behave in an emotionally stable manner which was not included in the new hypothetical question. (Tr. 45).